**FILED & ENTERED**

**MAR 22 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Penelope Charlene Jeffries<br><br><br>                                              Debtor(s).<br><br>Nicole Zambo<br>                                              Plaintiff(s),<br>    v.<br><br>Penelope Charlene Jeffries<br><br><br>                                              Defendant(s). | CHAPTER 7<br><br>Case No.: 1:16-bk-13445-MT<br>Adv No:   1:17-ap-01023-MT<br><br><br><br><br>**MEMORANDUM OF DECISION GRANTING IN PART, DENYING IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIM TO DETERMINE DISCHARGEABILITY OF DEBT UNDER § 523(a)(6)** |

Plaintiff Nicole Zambo ("Plaintiff") and Defendant Penelope Jeffries ("Defendant") lived in the same apartment building in Studio City California (the "Building"). Starting sometime in April 2010, Defendant began targeting Plaintiff and her then boyfriend ("Desroches") after Plaintiff confronted her about a car accident in the Building parking lot involving Defendant. Decl. of Nicole Zambo ISO Dischargeability Complaint (the "Zambo Decl."), Ex. 2, ¶ 36.  From then on, Plaintiff alleges Defendant began a

campaign of harassment against Plaintiff and Desroches, which she describes as consisting of "physical threats, verbal abuse, and destruction of personal property." Zambo Decl., ¶ 3. The harassment is alleged to have continued even after September 2012, when Plaintiff was issued a Civil Harassment Restraining Order against Defendant, barring Defendant from having contact with or coming within 15 feet of Plaintiff, Desroches, and their toddler daughter. Id. Ex. 1. Plaintiff and her family moved from the Building in early January 2013.

On June 2, 2014, Plaintiff and Desroches filed an amended complaint against Defendant, the managers, and the owners of the Building, alleging various causes of action related to Defendant's harassment and the failure on the part of the owner and manager to stop it (the "State Court Complaint"). Id. Ex. 2. Against Defendant specifically, Plaintiff alleged facts supporting causes of action for Negligence (Fifth Cause of Action); Intentional Infliction of Emotional Distress ("IIED," Seventh Cause of Action); and Assault (Tenth Cause of Action). See id., Ex. 2, ¶ 37-48.

On September 14, 2015, a trial was convened before the California Superior Court (the "State Court") on the State Court Complaint, at which Plaintiff and Desroches appeared but Defendant did not. Id., Ex. 4. The State Court then proceeded by way of default prove-up, and took testimony from Plaintiff and Desroches. Id. No transcript of the testimony offered in the State Court was submitted with this Summary Judgment but the trial record provided lists all exhibits that the State Court admitted into evidence; some exhibits include a brief description. Id., Ex. 4 at internal p. 1-6. At the end of the proceeding, the State Court entered judgment in favor of Plaintiff and Desroches in the amount of $67,000 and costs of suit of $500 (the "Judgment"). The Judgment indicates that Defendant was served with notice of trial on or about September 19, 2014, almost one year before the trial date. Id., Ex. 5.

On October 26, 2015, Defendant filed an appeal of the Judgment (the "Appeal"). The substance of Defendant's appeal is unknown, as Plaintiff submitted only the "Notice of Filing of Notice of Appeal (Unlimited Jurisdiction)" and Defendant did not submit anything at all in response to this Motion for Summary Judgment. See id., Ex. 6. A

review of the State Court Appellate docket reflects that Defendant's appeal was dismissed on December 17, 2015.[1]

On December 4, 2016, Defendant filed a voluntary chapter 7 petition. On March 7, 2017, Plaintiff filed a timely adversary complaint to determine the dischargeability of the Judgment under § 523(a)(6).

On September 27, 2017, at an adversary status conference, Defendant appeared via telephone. It appeared that Defendant had a difficult time understanding and communicating, and stated that she had a traumatic brain injury due to seizures. Defendant contended that she was planning to undergo cognitive therapy beginning in January 2018, but made no representation about her cognitive state at the time she engaged in the actions on which the Judgment is based. To accommodate Defendant's health issues and both of the self-represented litigants, the Court set extended deadlines for a Motion for Summary Judgment. See Scheduling Order, ad. ECF doc. 8, Sept. 29, 2017. Plaintiff filed a timely motion for summary judgment on November 13, 2017. Defendant did not file a response, irrespective of the extended February 7, 2018 deadline set by the Court.

## I. Summary Judgment Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the

---

[1] The Court exercises its discretion to take judicial notice of the State Court docket for the appeal B268022 under Fed. R. Evid. 201.

existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 886 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

II.     **Issue Preclusion and Default Judgments**

Collateral estoppel principles apply in a discharge exception proceeding under § 523(a). Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). Under 28 U.S.C. 1738, as a matter of full faith and credit, federal courts are required to apply the pertinent state's collateral estoppel principles. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Under California law, collateral estoppel or issue preclusion, applies only if certain threshold requirements are met: 1) the issue sought to be precluded from relitigation is identical to that decided in the former proceeding; 2) the issue was actually litigated in the former proceeding; 3) the issue was necessarily decided in the former proceeding; 4) the issue in the former proceeding was final and on the merits; and 5) the party against whom preclusion is sought is the same, or in privity with, the party to the former proceeding. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001).

For issue preclusion to apply to a default judgment, two additional conditions must be met: (1) "the defendant 'has been personally served with summons or has actual knowledge of the existence of the litigation" and (2) "the record shows an express finding upon the allegation for which preclusion is sought." Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1124 (9th Cir. 2003), citing In re Harmon, 250 F.3d at 1245.

If the threshold requirements are met, the court must also find that giving the previous judgment preclusive effect would further the public policies underlying the issue preclusion doctrine. Id. at 1245.

**a. Nondischargability under § 523(a)(6)**

To determine whether the Judgment is preclusive here, the Court must first determine whether the cause of action, IIED, is similar enough to the Bankruptcy Code's § 523(a)(6) standard for issue preclusion to apply.

Section 523(a)(6) bars an individual from receiving a discharge of a debt resulting from "willful and malicious injury." Under § 523(a)(6), the "willful" and "malicious" requirements are considered independently. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir.2008). A "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). An act falls within § 523(a)(6) only if the act is "done with the actual intent to cause injury." Id. This requirement is satisfied when "either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir.2001). A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Jercich, 238 F.3d at 1209 (quoting Murray v. Bammer (In re Bammer), 131 F.3d 788, 791 (9th Cir.1997)).

The state court cause of action against Defendant for which damages may be nondischargeable is intentional infliction of emotional distress, and not assault. See People v. Williams, 26 Cal. 4th 779, 790 (holding that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur).

1. Identical Issue

Plaintiffs asserted a claim against Defendant alleging, in part, that Defendant had "engaged in a constant barrage of harassment, threats, and assaults against Plaintiffs' family and their property." In California, IIED requires proof that: (1) the defendant's conduct was outrageous, (2) the defendant intended to cause or recklessly disregarded

the probability of causing emotional distress, and (3) the plaintiff had severe emotional suffering, and (4) it was actually and proximately caused by defendant's conduct. Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir.2004); *accord* Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982).

In Kawaauhau v. Geiger, the Supreme Court held that an act is covered by § 523(a)(6) if it was committed with "the actual intent to cause injury." 523 U.S. 57, 61 (1998). Without equating intentional torts with acts covered by § 523(a)(6), the Court noted that § 523(a)(6)'s specification of "willful and malicious injury" "triggers in the lawyer's mind the category of 'intentional torts,'.... Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" Id. at 61–62 (internal citations omitted).

Plaintiff made a claim for an intentional tort (IIED) in her the State Court Complaint, alleging a campaign of harassment that included Defendant threatening her physical safety (State Court Complaint, ¶ 37(e); throwing refuse and animal waste in her patio and garden (State Court Complaint, ¶ 37(g), (h), (j)); making obscene gestures and yelling obscenities at Plaintiff and her child (State Court Complaint, ¶ 37(e)); intentionally dousing Plaintiff with a hose no less than three times while Plaintiff was nine-months pregnant (State Court Complaint, ¶ 37(k)); and placing a piece of rotting meat in the grill of Plaintiff's car to make the vehicle smell awful (State Court Complaint, ¶ 37(d)). In addition to all of the complained of harassment, Plaintiff also contended that Defendant also stole and/or destroyed her property (State Court Complaint, ¶ (f), (I), (n), (o)). Plaintiff also alleged that the stress of the incessant harassment from Defendant caused her to be admitted to the hospital during her pregnancy. Plaintiffs alleged that Defendant engaged in outrageous actions, which were clearly wrongful and "exceeded all bounds that are tolerated in a civilized society", and that these actions were done intentionally with the intent to inflict severe emotional distress. State Court Complaint, ¶ 37-48; ¶ 136-137. Defendant undertook the alleged harassment knowing that it would cause Plaintiff injury for which there no just cause. Id. Thus, the issues raised in the adversary proceeding are the same as the issues that were raised in the State Court Complaint and on which Judgment was entered. This requirement is met.

2.  Actually Litigated and Necessarily Decided

Under California law, the fact that a plaintiff "obtained a judgment by default does not, in itself, foreclose the possibility that the resolution of some issues in the litigation would later have preclusive effect." Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1246 (9th Cir.2001). Under California law, in order for the Court to conclude that the issue had been actually litigated in the prior proceeding, it must either find that the state court made an express finding on the issue, or the Court must conclude that the issue was necessarily decided in the prior proceeding. See id. at 1248 (discussing the express finding requirement); id. at 1249 (explaining that, as a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated in that proceeding).

Plaintiff alleged three claims against Defendant in the State Court Complaint, only one of which the damages from which could be found nondischargeable here: IIED. Neither the Judgment nor the trial record contains explicit findings. The trial record, however, does contain a rather long list of exhibits that the State Court admitted into evidence and considered in entering Judgment for Plaintiff.  Included in the list of admitted exhibits are numerous undescribed photographs, as well as (1) discharge paperwork from Providence St. Joseph Hospital and other medical records; (2) videos of Defendant taunting Plaintiff, littering on Plaintiff's area of the Building; (3) video of Defendant harassing Plaintiff where the police are called; (4) video of Defendant throwing raw meat into Plaintiff's front walkway; (5) video of Defendant vandalizing Plaintiff's car; (6) video of Defendant unscrewing Plaintiff's security light and placing feces on her front walkway; (7) video of Defendant gesturing and harassing Plaintiff and her child; (8) video of Defendant violating restraining order and taunting Plaintiff; and (9) video of Defendant watering garden and flashing/exposing herself. Id., Ex. 4.

For the reasons explained above, the Court concludes that the State Court necessarily decided that Defendant intentionally acted so as to cause emotional injury to Plaintiff.  It follows that the issue of whether Defendant intentionally acted so as to

emotionally injure Plaintiff was actually litigated. See In re Harmon, 250 F.3d at 1248–49.

This requirement is met, except as to the amount of damages that is nondischargeable. See Subsection 6 of the Memorandum below.

### 3. Final and on the Merits

A judgment is considered final, for purposes of collateral estoppel, when it is free from direct attack and may not be relitigated. People v. Sims, 32 Cal. 3d 468, 486 (1982). California Rules of the Court require that an appeal be filed on or before the earliest of: 1) 30 days after clerk mails "Notice of Entry" or a file-stamped copy of the judgment, showing the mail date, 2) 30 days after the party seeking an appeal is served with "Notice of Entry" or a file-stamped copy of the judgment, accompanied by proof of service, or 3) 90 days after the judgment is entered. Cal. R. Ct. 8.822. A judgment was rendered on the merits if, "the substance of the claim was tried and determined …." Estate of Gump, 1 Cal. App. 4th 582, 608 (Cal. Ct. App. 1991).

The Judgment was entered on September 14, 2015. Defendant's Appeal was filed on October 21, 2015, and dismissed on December 17, 2015, under Cal. R. Ct. 8.100(c) for failure to pay the filing fee. Zambo et al v. First Equity Property Mgmt., No. B268022 (Cal. Ct. App., Dec. 17, 2015) (LEXIS Courtlink, accessed March 20, 2018). Plaintiff submitted a copy of a Notice of Remittitur from the Clerk of the California Court of Appeal, dated February 22, 2016 that confirms that the order dismissing the Appeal is final. Zambo Decl., Ex. Based on the record submitted here and explained in more detail in the Section 2 above, the factual allegations against Defendant were tried and determined. This requirement is met

### 4. Same Party or Privity

Defendant is the same person as the defendant in the State Court Action. Defendant has not argued or represented otherwise. This requirement is met.

### 5. Personal Service or Actual Knowledge

Debtor stated at the prior hearing that she did not appear at the State Court trial because she was in the hospital. As stated above, the Judgment indicates that Defendant was served with notice of trial on or about September 19, 2014, almost one year before the trial date. Id., Ex. 5. Defendant's having been served with the notice of trial and her appeal of the Judgment shows that she "ha[d] actual knowledge of the existence of the litigation."

### 6. Express Findings in State Court re Nondischargeable Conduct

The rationale behind finding defendants estopped by default judgments is that "a defendant who is served with a summons and complaint but who fails to respond is presumed to admit all the facts which are well pleaded in the complaint." Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). The preclusive effect of a default judgment depends on whether the judgment contains an express finding on the allegations. See Cantrell, 329 F.3d at 1124.

As explained in Section II(a)(2) above, the State Court record submitted contains sufficient detail of the evidence the State Court considered when it found for Plaintiff. The State Court Complaint, however, alleged both causes of action that require intent (IIED) as well as causes of action that require a less culpable state of mind (negligence and assault). The Judgment is not preclusive as to the amount of damages because there were no express findings to explain how the State Court determined how much of the damage award was for nondischargeable conduct. See generally Biring v. Dhawan (In re Biring), 2012 Bankr. LEXIS 392, *12 (B.A.P. 9th Cir. Jan. 12, 2012) (rejecting the debtor's argument that "the issue of fraud was not necessarily decided because the damages that were awarded could have been based on Dhawan's claims for negligent misrepresentation or breach of contract rather than fraud" in applying collateral estoppel based on a default judgment). This requirement is met, except for the damage award.

       7.    <u>Policy Considerations</u>

The California Supreme Court has identified three policies underlying the doctrine of issue preclusion: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." <u>Baldwin v. Kilpatrick (In re Baldwin)</u>, 249 F.3d 912, 919-920 (9th Cir. 2001). Here, the Court finds that giving preclusive effect to the Judgment for all issues, except for the amount of damages attributable to IIED, supports the public policy.

## III.    Conclusion

The Court finds the Judgment nondischargeable. The damages awarded appear most likely to be attributable to the IIED claim, but the Judgment of the State Court does not make it clear whether they were for IIED or negligence or assault. At the continued adversary status conference, set for March 28, 2018, at 1:00 p.m. (see ad. doc. no. 8, Sept. 29, 2017), a trial date will be set to determine solely the amount of damages that is nondischargeable.

Court to issue Order Granting in Part, Denying in Part, Motion for Summary Judgment concurrently with this Memorandum.

###

Date: March 22, 2018

*Maureen A. Tighe*
Maureen A. Tighe
United States Bankruptcy Judge